UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRADLEY-FERN HALL I, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>MMA FERN HALL CROSSING LLC, and<br>BFIM SPECIAL LIMITED PARTNER, INC.,<br><br>    Defendants. | Case No. 19-11181 |

## COMPLAINT

COMES NOW Plaintiff Bradley-Fern Hall I, LLC, by and through its undersigned attorneys, and for its Complaint against Defendants MMA Fern Hall Crossing LLC and BFIM Special Limited Partner, Inc. (collectively, "Defendants"), states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. This action seeks, among other things, a declaration of the rights and obligations of the parties to the limited partnership agreement governing Fern Hall Limited Partnership (the "Partnership"), which is the owner of an affordable housing development located in Aynor, South Carolina (the "Project").

2. Plaintiff Bradley-Fern Hall I, LLC ("Bradley" or the "General Partner") is the General Partner of the Partnership and the holder of a buyout option with respect to Defendants' interests in the Partnership.

3. The General Partner is a limited liability company formed and existing under the laws of the State of South Carolina with its principal place of business located in Aynor, South Carolina. Plaintiff's sole member is its manager, Brad Queener, who is a citizen of South Carolina.

4.      Defendant MMA Fern Hall Crossing LLC ("MMA" or the "Investor Limited Partner") is the Investor Limited Partner of the Partnership. MMA is a limited liability company formed and existing under the laws of the State of Delaware with its principal place of business in Boston, Massachusetts. Upon information and belief, as confirmed by MMA's counsel in connection with Bradley's removal to this Court of prior state court litigation between the parties, none of the members of MMA are citizens of the State of South Carolina.

5.      Defendant BFIM Special Limited Partner, Inc. ("BFIM" or the "Special Limited Partner") is the Special Limited Partner of the Partnership. BFIM is a corporation formed and existing under the laws of the State of Florida with its principal place of business in Boston, Massachusetts. Collectively, MMA and BFIM are hereinafter referred to as "Defendants."

6.      BFIM is, upon information and belief, affiliated with Boston Financial Investment Management, which is located in Boston, Massachusetts and manages approximately $8.5 billion in financial investments comprising over 1,450 apartment complexes and 140,000 apartment units.

7.      Upon information and belief, Boston Financial Investment Management currently manages Defendants' assets in the Partnership and claims entitlement to collect a percentage of any financial interest that Defendants may have in the Partnership.

8.      The matter in controversy exceeds the sum of $75,000 exclusive of interests and costs, and is between citizens of different States; thus, there is complete diversity in this action.

9.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 2201(a).

10.     Venue is appropriate in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1).

**FACTUAL ALLEGATIONS**

A.     **The Low-Income Housing Tax Credit Program.**

11.    The low-income housing tax credit ("Tax Credit") is a federal tax credit that is generated from certain multi-unit housing projects that satisfy a number of requirements, that include, but are not limited to, an agreement by the property owner to only rent certain units to households with incomes below certain limits at rents that do not exceed certain federally-mandated limits for a period of at least 15 years after the property is placed in service (the "Compliance Period").

12.    The Low Income Housing Tax Credit Program (the "LIHTC Program") is governed by Section 42 of the Internal Revenue Code, certain Treasury Regulations, guidance from the Treasury Department and the Internal Revenue Service, and state-specific procedures contained in various documents adopted by designated housing agencies in each state (collectively, the "Tax Credit Rules").

13.    In a typical low-income housing project, the project owner is organized as a limited partnership or limited liability company (here, the Partnership), a developer (which may be a for-profit or non-profit organization, here Bradley) acts as General Partner or Managing Member of the owner entity, controlling the day-to-day operations of the project, and a third-party tax credit investor is admitted as a Limited Partner or an Investor Member (here, MMA), agreeing to contribute capital to the owner entity (the Partnership) in exchange for an allocation of the Tax Credits (and related tax losses) available to the project owner (the Partnership).

14.    The Tax Credit Rules provide that only the project owner of a qualified low-income housing project can qualify for Tax Credits, and only if the project owner meets certain terms and conditions.

15. The project owner collects the Tax Credits during the fifteen-year Compliance Period. After the end of the Compliance Period, Tax Credits are no longer available. As a result, by the end of the Compliance Period, the investor member or limited partner has realized the vast majority of economic benefits it bargained for and expected from the project.

16. A purchase or buyout option is often one of the primary economic incentives for the developer or general partner in a typical low-income housing project. While the investor member or limited partner receives a substantial yearly return on its investment over many, many years in the form of Tax Credits and other economic benefits, including tax losses from the owner entity, the developer or general partner provides development and management services to the project during the Compliance Period for modest fees; thus making the purchase or buyout option a primary economic incentive and benefit.

17. The developer undertakes its investment of time, resources and money, as well as its duties and obligations as general partner, with the expectation that it will have the option to acquire the limited partner or investor member's interests in the operation of the business (here, the Partnership) as an on-going concern or acquire the real estate itself at the end of the Compliance Period.

18. In this case, Bradley invested in the Partnership in exchange for certain buyout option rights and it has dutifully served as the General Partner of the Partnership with these understandings and expectations.

19. Without the rights afforded to it through the buyout option, Bradley would have much less incentive to participate in the development of the low-income housing developments and would be deprived of an important right to which the parties had agreed from inception of the Partnership.

**B.      The Partnership and the Project.**

20.     The Partnership was formed in 2002 for the purpose of investing in real property and constructing, owning, operating, maintaining, and sustaining, for many decades, an affordable housing development, located in Aynor, South Carolina, (the "Project") to participate in the LIHTC Program.

21.     The Partnership is governed by a Third Amended and Restated Agreement of Limited Partnership (the "LPA").  A true and correct copy of the LPA is attached hereto as Exhibit A.

22.     Beginning in 2006, MMA and BFIM's predecessor, MMA Special Limited Partner, Inc., collectively invested approximately $2 million in the Partnership so that the General Partner could finance, develop, and construct the Project.

23.     In exchange, MMA and MMA Special Limited Partner, Inc. were to receive, collectively, in excess of $2.2 million in Tax Credits and other benefits, including potential tax losses and other incidental benefits.

24.     Upon information and belief, the allocation and receipt of the Tax Credits and potential tax losses were the material motivating factors for MMA and MMA Special Limited Partner, Inc.'s investment in the Partnership.

25.     Upon information and belief, the investment assumptions or considerations associated with MMA and MMA Special Limited Partner, Inc.'s investment decision considered only the economic benefit of the Tax Credits and potential tax losses during the Compliance Period, and no consideration was given for a residual cash payment in exchange for the sale or transfer of its ownership interests after the end of the Compliance Period.

26. Upon information and belief, these investment assumptions or considerations did not, in any respect, assume a liquidation of the Partnership or a sale of the Project upon the transfer of MMA and/or MMA Special Limited Partner, Inc.'s interests in the Partnership at the end of the Compliance Period or thereafter.

27. Since entering into the LPA, the General Partner has successfully operated the Project and MMA and MMA Special Limited Partner, Inc. (or BFIM as its successor) collectively have received approximately $1,990,131 in Tax Credits, which provides a dollar for dollar income tax benefit, and approximately $855,950 in tax losses, which provides, upon information and belief, an income tax benefit of approximately 35% of this amount.

**C.    The Buyout Option.**

28. Pursuant to Section 6.13 of the LPA, the General Partner has a buyout option allowing it to purchase Defendants' entire interests in the Partnership (the "Buyout Option").

29. Pursuant to Section 6.13.B, the General Partner may exercise this Buyout Option after expiration of the Compliance Period and for a period of one (1) year thereafter (the "Option Period").

30. The Compliance Period for the Project ended on December 31, 2018.

31. Section 6.13.C of the LPA provides the mechanism to determine the price which the General Partner is to pay to acquire Defendants' entire interests in the Partnership (the "Buyout Price"). Specifically, the Buyout Price "shall be the greater of (i) all federal, state and local taxes imposed on the Limited Partner attributable to the Buyout; or (ii) the fair market value (as of the date of the closing of the Buyout) of the Investor Limited Partner's Interests as determined in accordance with this Section 6.13."

32. Section 6.13.C(i) further provides that the Buyout Option may be exercised "only upon the written agreement of Managing General Partner to continue to use the Project for low-income housing purposes subject to restricted rents for the greater of: (A) the Compliance Period; or (B) the duration of the Extended Use Period."

33. Section 6.13.D of the LPA provides that the value of the Investor Limited Partner's interests in the Partnership shall be determined by appraisals to "be performed by an Accredited Senior Appraiser as certified by the American Society of Appraisers and acceptable to the Limited Partner (an 'ASA Appraiser') or an MAI certified real estate appraiser acceptable to the Limited Partner (an 'MAI Appraiser')."

34. Before the General Partner may submit a Buyout Notice under Section 6.13 of the LPA, it must propose, through written submission, two appraisers (both shall be either an ASA Appraiser or an MAI Appraiser or both) to MMA and MMA must approve one or both of the proposed appraisers within five (5) business days of the written submission.

35. On December 31, 2018, and January 1, 2019, the General Partner commenced the buyout process by proposing two appraisers to MMA via written submission pursuant to Section 6.13.D of the LPA, including the General Partner's written agreement continue to use the Project for low-income housing purposes subject to restricted rents for the duration of the Extended Use Period pursuant to Section 6.13.C of the LPA. True and correct copies of the General Partner's correspondence are attached hereto as Exhibit B.

**D.  Defendants' Attempt to Extinguish the General Partner's Buyout Option by Exercising their Right to Request a Sale of the Project.**

36. Section 6.4.J of the LPA provides, in relevant part, that "if requested to do so by the Investor Limited Partner at any time after the Compliance Period, the General Partners shall use their best efforts to sell or refinance the Project on terms acceptable to the Investor Limited

Partner. *** Any proposal … from another buyer of the Project which is acceptable to the Investor Limited Partner shall be accepted by the Partnership" (the "Requested Sale Right").

37. By letter dated January 2, 2019 and with knowledge of the General Partners' intent to exercise its Buyout Option, the Investor Limited Partner purported to exercise the Requested Sale Right and requested that the General Partner engage within thirty days a brokerage firm acceptable to the Investor Limited Partner "to conduct the marketing and sale of the Project for a purchase price acceptable to the Investor Limited Partner."  A true and correct copy of the Investor Limited Partner's January 2, 2019 correspondence is attached hereto as Exhibit C.

38. By letter dated January 7, 2019, the Investor Limited Partner approved one of the appraisers proposed by the General Partner in its January 1 letter (Cushman & Wakefield, with whom, upon information and belief, the Investor Limited Partner was familiar based on its prior dealings) and the appraisal process to perfect the Buyout Option commenced.

39. Despite the commencement of the Buyout Option, and in contravention of the LPA, the Investor Limited Partner reiterated that it intended to force a sale of the Project and dissolution of the Partnership; neither of which the Investor Limited Partner has the right or ability to do.  A true and correct copy of the Investor Limited Partner's January 7, 2019 correspondence is attached hereto as Exhibit D.

40. Defendants' attempt to force the General Partner to sell the Project and dissolve the Partnership is in contravention of the LPA and the General Partner's irrevocable rights, pursuant to the Buyout Option and LPA terms, to purchase Defendants' interests in the Partnership, continue operating the Project as low-income housing, and to not dissolve the Partnership.

41. Upon information and belief, the investment assumptions or considerations associated with MMA and MMA Special Limited Partner, Inc.'s investment in the Partnership did

not, in any respect, ascribe any residual, or other, value assumptions to their limited partner interests upon a sale of the Project at or following the end of the Compliance Period.

**E.     The General Partner's Buyout Notice.**

42.     Section 6.13.E of the LPA directs the appraiser (here Cushman & Wakefield), when determining the fair market value of the Investor Limited Partner's interests in the Partnership, to consider the value of the Partnership's assets and give due consideration to other relevant factors relating to the value of the Investor Limited Partner's interests, including but not limited to several specific considerations.

43.     After Defendants approved Cushman & Wakefield as the jointly-selected appraiser pursuant to Section 6.13 of the LPA, Cushman & Wakefield performed its appraisal of the Project and of the Investor Limited Partner's interests in the Partnership and delivered detailed reports to the General Partner.

44.     According to the appraisals, the fair market value of the Investor Limited Partner's interests in the Partnership is $85,000.

45.     Pursuant to Section 6.13 of the LPA, the General Partner then finalized the exercise of its Buyout Option, through a Buyout Notice, in compliance with the terms and conditions of the LPA, and advised Defendants that it would close on its acquisition of their interests on June 28, 2019.  A true and correct copy of the General Partner's April 26, 2019 Buyout Notice pursuant to Section 6.13 of the LPA is attached hereto as Exhibit E.

**F.     Defendants' Breaches and Anticipatory Breaches of the LPA.**

46.     Pursuant to Section 6.13.C of the LPA, if the General Partner's Buyout Notices include "appraisals or calculations which, in the reasonable opinion of the Investor Limited Partner, contain material errors, the notice shall not constitute an effective Buyout Notice," but the Investor Limited Partner has an affirmative obligation to allow the General Partner to cure such

alleged material errors and is required to "promptly so notify" the General Partner of the material errors so that the General Partner may cure them during the Option Period.

47. Defendants responded to the General Partner's Buyout Notice on April 29, 2019, claiming that the Buyout Notice was not effective because the appraisal of the Investor Limited Partner's interests purportedly contained material errors, in that the appraiser allegedly "fails to consider the absence of any limitations on the Investor Limited Partner's ability to require liquidation as specified in 6.13E(iv) and fails to consider the value of the Investor Limited Partner's capital account." Defendants claimed that if the appraiser had "considered these relevant factors, in concert with the Investor Limited Partner's requests on January 2, 2019 and March 19, 2019 that the property be sold, the appraiser should have incorporated the Investor Limited Partner's capital account in its conclusion of value." A true and correct copy of Defendants' April 29, 2019 correspondence is attached hereto as Exhibit F.

48. On May 3, 2019, and despite not being permitted to do so under the terms of the LPA, Defendants attempted to supplement their April 29 correspondence with an additional, lengthier recitation of alleged material errors in the Buyout Notice, again claiming, among other things, that the appraiser erroneously failed to consider the Investor Limited Partner's capital account and purported right to require liquidation of the Partnership. A true and correct copy of Defendants' May 3, 2019 correspondence is attached hereto as Exhibit G.

49. On May 21, 2019, the appraiser responded to Defendants' allegations of material error expressed in their May 3 correspondence, explaining that his appraisal had, among other things, considered all factors required under the LPA, including limitations on the Investor Limited Partner's ability to require liquidation; had considered the Investor Limited Partner's capital account and its right to request a sale of the Project; and had concluded that these issues were not

economically relevant to his conclusions of value; thus there were no errors, much less material errors, in the appraisal.

50. On May 24, 2019, the General Partner provided the appraiser's May 21 letter to Defendants. A true and correct copy of the General Partner's May 24, 2019 correspondence, including the appraiser's May 21 letter, is attached hereto as Exhibit H.

51. The General Partner's Buyout Notice was proper, valid, effective and enforceable, and there are no material errors in the appraisals or calculations included or contained within the Buyout Notice; yet, Defendants have indicated and stated that they will not comply with the Buyout Notice and transfer their interests as required by the Buyout Notice and under the LPA.

52. Neither the LPA nor the Buyout Option entitles Defendants to subjectively disagree with the appraised fair market value of their interests in the Partnership and then hold out for what they believe to be a more accurate price.

53. The General Partner is entitled to close on the Buyout Notice and acquire Defendants' entire interests in the Partnership as provided by Section 6.13 of the LPA, but Defendants have refused transfer their interests to the General Partner as required.

## COUNT I—DECLARATORY JUDGMENT

54. The General Partner fully incorporates the above paragraphs by reference as if fully stated herein.

55. The LPA is a valid and binding contract.

56. The LPA includes the Buyout Option, for which the General Partner provided sufficient consideration.

57. The General Partner has complied with the LPA, specifically Section 6.13 thereof, and has exercised its Buyout Option, thereby creating a binding contract for the sale of Defendants' entire interests in the Partnership to the General Partner in exchange for the Buyout Price.

58. An actual controversy exists as to the Buyout Notice, specifically concerning the appraisals or calculations contained therein, and the General Partner's right to acquire Defendants' interests in the Partnership pursuant to the Buyout Notice.

59. There are no material errors in the appraisals or calculations contained within the Buyout Notice, but Defendants have stated that they do not agree with the valuation of their interests and indicated that they will not sell their interests to the General Partner pursuant to the Buyout Notice.

60. The General Partner maintains that Section 6.13 of the LPA requires the jointly-selected appraiser to consider certain specified factors in conducting the appraisal and grants discretion to the appraiser to determine: (i) the appropriate appraisal methodology; (ii) the impact on value of each factor required to be considered under Section 6.13; and (iii) the appropriate additional considerations that impact the appraiser's ultimate conclusion of value. Accordingly, a party's disagreement with the appraiser's subjective, professional determinations cannot constitute a "material error" under the LPA.

61. Defendants have expressed disagreement with the jointly-selected appraiser's subjective, professional determinations and conclusions made within the scope of the discretion granted to the appraiser under Section 6.13 of the LPA, and contend that their disagreements constitute "material errors" rendering the General Partner's Buyout Notice ineffective.

62. In Defendants' view, Section 6.13 of the LPA permits them to subjectively disagree with the appraiser's professional determinations and conclusions, and simply hold out for a higher

Buyout Price than they are otherwise entitled to receive by characterizing their disagreements as "material errors" that render the Buyout Notice ineffective.

63. The interpretation of the LPA articulated by Defendants would allow them to prevent the General Partner from ever exercising its Buyout Option and deprive the General Partner of the benefit of its bargain, including its ability to acquire Defendants' interests and continue to operate the Project as affordable housing, all in contravention of the parties' contract, Section 42 of the Code, and the LIHTC program. Such a result was not a result contemplated by the parties in entering into the LPA, and is contrary to the plain language of the LPA.

64. A declaratory judgment would resolve the uncertainty or controversy giving rise to these conflicting contentions.

65. The General Partner is entitled to an order, pursuant to 28 U.S.C. § 2201(a), declaring that:

   a. The General Partner's Buyout Notice is valid, effective, and enforceable; and

   b. Defendants must sell and transfer, pursuant to the Buyout Notice, their entire interests in the Partnership to the General Partner.

## COUNT II—BREACH OF CONTRACT

66. The General Partner fully incorporates the above paragraphs by reference as if fully stated herein.

67. The LPA is a valid and binding contract.

68. The LPA includes the Buyout Option, for which the General Partner provided sufficient consideration.

69. The General Partner has complied with the LPA, specifically Section 6.13 thereof, and has exercised its Buyout Option, thereby creating a binding contract for the sale of Defendants' entire interests in the Partnership to the General Partner in exchange for the Buyout Price.

70. Defendants have breached their contractual obligations to the General Partner.

71. The General Partner is entitled to, among other things, an order for specific performance requiring Defendants to sell and transfer their interests in the Partnership to the General Partner as set forth in the Buyout Notice.

72. The General Partner is entitled to recover any damages it incurs due to Defendants' breaches of contract.

### COUNT III—ANTICIPATORY BREACH OF CONTRACT

73. The General Partner fully incorporates the above paragraphs by reference as if fully stated herein.

74. The LPA is a valid and binding contract.

75. The LPA includes the Buyout Option, for which the General Partner provided sufficient consideration.

76. The General Partner has complied with the LPA, specifically Section 6.13 thereof, and has exercised its Buyout Option, thereby creating a binding contract for the sale of Defendants' entire interests in the Partnership to the General Partner in exchange for the Buyout Price.

77. Defendants have anticipatorily breached their contractual obligations to sell their interests to the General Partner through, among other things, their responses to the General Partner's Buyout Notice; and also by indicating that they will not sell their interests to the General Partner as required by the Buyout Notice.

78. The General Partner is entitled to, among other things, an order for specific performance requiring Defendants to sell and transfer their interests in the Partnership to the General Partner as set forth in the Buyout Notice.

79. The General Partner is entitled to recover any damages it incurs due to Defendants' anticipatory breaches of contract.

## JURY DEMAND

The General Partner respectfully demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the General Partner respectfully prays for the following relief:

1. That the Court issue a declaration that:

   a. The General Partner's Buyout Notice is valid, effective, and enforceable; and

   b. Defendants must sell and transfer, pursuant to the Buyout Notice, their entire interests in the Partnership to the General Partner.

2. That the Court order specific performance by Defendants, pursuant to Section 6.13 of the LPA, to sell and transfer their entire interests in the Partnership to the General Partner as set forth in the Buyout Notice;

3. That the Court order such other and further relief, including, without limitation, monetary relief and attorneys' fees and costs, which the Court may deem just, equitable and appropriate under the circumstances presented.

Dated: May 24, 2019            Respectfully submitted,

                               BRADLEY-FERN HALL I, LLC,

                               By Its Attorneys,

                               */s/*Andrea L. Martin

Andrea L. Martin (BBO 666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
(617) 345-3000

OF COUNSEL

David A. Davenport
WINTHROP & WEINSTINE, P.A.
225 S. Sixth Street, Ste. 3500
Minneapolis, MN 55402
(612) 604-6716

## CERTIFICATE OF SERVICE

    I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 24, 2019.

                                                      /s/Andrea L. Martin
                                                      Andrea L. Martin

17357825v1