```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS

                                   )
BRADLEY-FERN HALL I, LLC,          )
                                   )          Civil Action
         Plaintiff,                )          No. 19-11181-DPW
                                   )
                                   )
v.                                 )
                                   )
MMA FERN HALL CROSSING LLC,        )
and BFIM SPECIAL LIMITED           )
PARTNER, INC.,                     )
                                   )
         Defendant.                )
-------------------------------

DOUGLAS COMPANY, LLC,              )
                                   )          Civil Action
         Plaintiff,                )          No. 20-10875-DPW
v.                                 )
                                   )
MMA KINGS CROSSING, LLC; MMA       )
SHELL POINTE, LLC; MMA             )
DOUGLAS MONTAGUE, LLC;             )
and BFIM SPECIAL LIMITED           )
PARTNER, INC.,                     )
         Defendants.               )


           BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
                UNITED STATES DISTRICT JUDGE

                      VIDEOCONFERENCE

                     October 9, 2020

         John J. Moakley United States Courthouse
                    One Courthouse Way
               Boston, Massachusetts  02210




                              Kelly Mortellite, RMR, CRR
                              Official Court Reporter
                              One Courthouse Way, Room 3200
                              Boston, Massachusetts  02210
                              mortellite@gmail.com
```

```
 1   APPEARANCES:

 2   Counsel on behalf of Plaintiff:
     David A. Davenport
 3   Winthrop & Weinstine, P.A.
     225 South Sixth Street, Ste.3500
 4   Minneapolis, MN 55402-4629
     612-604-6716
 5   ddavenport@winthrop.com

 6   Gregory S. Paonessa
     Burns & Levinson LLP
 7   125 Summer Street
     Boston, MA 02110
 8   617-345-3000
     gpaonessa@burnslev.com
 9
     Counsel on behalf of Defendant:
10   David E. Lurie
     Lurie Friedman LLP
11   One McKinley Square
     Boston, MA 02109
12   617-367-1970
     dlurie@luriefriedman.com
13
     Karen E. Friedman
14   Lurie Friedman LLP
     One McKinley Square
15   Boston, MA 02109
     617-367-1970
16   kfriedman@luriefriedman.com

17

18

19

20

21

22

23

24

25
```

```
  1                    P R O C E E D I N G S
  2           COURTROOM CLERK:  Civil Action Number 19-11181,
  3  Bradley Fern Hall v. MMA Fern Hall Crossing, and with that,
  4  20-10875, Douglas Company LLC v. MMA Kings Crossing LLC.
  5           To all participants, pursuant to Local Rule 83.3 all
  6  persons granted remote access to these proceedings are reminded
  7  of the general prohibition against photographing, recording and
  8  rebroadcasting of court proceedings.  Violation of these
  9  prohibitions may result in sanctions.
02:33 10           Would counsel starting with the plaintiffs please
 11  state your name for the record.
 12           MR. DAVENPORT:  Good afternoon.  David Davenport from
 13  Winthrop & Weinstine on behalf of plaintiff.  My colleague,
 14  Alex Hagstrom, is also on the Zoom line, along with my client
 15  Bradley Queener, also Drew Schaumber who is a representative of
 16  Douglas Company for the second case.
 17           MR. LURIE:  David Lurie for the defendants, Your
 18  Honor.
 19           THE COURT:  All right.  Karen Friedman for the
02:33 20  defendants as well.
 21           MR. PAONESSA:  Your Honor, Greg Paonessa from Burns &
 22  Levinson on behalf of the plaintiffs.
 23           THE COURT:  All right.  Well, since I got notice of
 24  the case from Judge Casper, I've been trying to go through and
 25  think about what I can offer on this.  I guess what probably is
```

    1   of most immediate interest is an immediate resolution of the
    2   case or as prompt a resolution of the case as possible since
    3   people, I suppose, want to get on with their lives.
    4           I'm sure that what's especially desirable is a
    5   successful resolution, but I can't provide that to both parties
    6   I don't think here.  But I can provide, I think, a way of
    7   getting to a conclusion at least in the trial court as promptly
    8   as possible.
    9           As I've read the materials in Douglas, I'm not sure
02:34 10   that there's anything there that needs -- I'm afraid someone
   11   has come on who we're getting feedback from -- anything there
   12   that really is significantly different from what's happening in
   13   Fern Hall, but you'll tell me that, I'm sure.
   14           My basic view right now is that I will be denying full
   15   summary judgment in Fern Hall and that I will be treating it as
   16   a jury-waive case.  My view I suppose is that the same thing
   17   would happen with the Douglas cases or the Douglas
   18   partnerships, and I don't know if there's anything in there
   19   that's unusual that I should be concerned about.
02:35 20           Here is what I propose, and I propose it, not finally
   21   determine it, but I would issue an opinion in Fern Hall in the
   22   next two weeks that would outline my resolution of the motion
   23   for partial summary judgment and the question of jury waiver
   24   that I think should provide you with as complete an
   25   interpretation of the contract, which I believe is a model for

1   the Douglas contracts, as possible.  An outline, identifying
2   with some specificity, the areas in which I think there will be
3   some need for factfinding on my part as the finder of fact
4   under a jury-waive system.
5           Of course my determination of summary judgment is not
6   a determination of the facts but simply a question of whether
7   or not there's a genuine issue of material fact that has to be
8   resolved in a separate setting.
9           My sense is that what we're really talking about,
10  unless there is some significant battles or the parties want to
11  have some sort of significant battles over questions of
12  timeliness -- and even there I don't think that there's a
13  genuine issue of material fact -- it's really about experts.
14  It's about how reasonable the appraisal is of Mr. Jones and
15  what that appraisal would look like if there were introduced
16  the capital accounts of the investor limited partners.  That's
17  broad-brush.
18          So I outline that to see if the parties have another
19  way of getting to this promptly.  What I see as a battle of
20  experts, it may well be that you're going to have to have a
21  little bit more discovery, but not much, to get to that, and
22  that it would be effectively applicable for all of the cases
23  here unless there's some unique circumstances among one or the
24  other of the Douglas cases that I haven't been able to tease
25  out yet because I'm not fully, obviously, familiar.

1          So maybe, Mr. Davenport, I'll look to you first.

2          MR. DAVENPORT:  In terms of if we might need some more
3  discovery before the bench trial?

4          THE COURT:  Well, more broadly, as a way of dealing
5  with this, I suppose if you -- you know, you see my opinion,
6  and you say, "Well, it really doesn't apply to these other
7  cases, we have got to do something else," of course I'll
8  understand that.

9          But I want to get it out there for you to understand
02:38 10  the approach that I'm taking to this, and the approach that I'm
11  taking is that I do have to have evidence in this case, and the
12  evidence focuses both on the question of reasonableness of the
13  appraisal that Mr. Jones did, and inextricably intertwined is
14  what kind of valuation would result from inclusion of the
15  capital accounts, and the capital accounts get developed more
16  fully with some sort of evaluation of a forced sale.

17          So if I'm missing something, in broad-brush, about how
18  to proceed in this case in a prompt way, I want you to tell me.

19          MR. DAVENPORT:  I don't think so.  I mean, I think the
02:39 20  Douglas cases are very much in line with the Fern cases, which
21  is why we all agreed to seek reassignment so it would be before
22  you, because I think we all anticipate that your ruling and the
23  ultimate outcome will have a pretty significant effect on the
24  Douglas case.  Same appraiser, same methodology, generally the
25  same contracts, largely the same timeline, just a little bit

```
 1     later the next year.
 2             So it's a little hard, other than agreeing with you
 3     conceptually, to see the court's order, understand the next
 4     steps, but it's hard for me to imagine that what you're
 5     outlining is inconsistent with at least plaintiffs' in both
 6     cases thought process.
 7             THE COURT:  Okay.  Mr. Lurie, any thought?
 8             MR. LURIE:  Right now I'm not aware of any issue with
 9     the Douglas case that would prevent the procedure that you
10     outline.  It makes sense to me.
11             THE COURT:  Okay.  So what I think would be the most
12     efficient and effective thing for me to do is to get this
13     memorandum out.  I've spent a fair amount of time with the
14     documents both at the pleading stage and now on summary
15     judgment.  And I think rather than take your time in argument,
16     I had to take my time getting that thing done.  I'm not sure
17     that there's anything more that's going to be added in argument
18     that I haven't seen in the papers already here.
19             What I propose to do is issue the memorandum as
20     promptly as I can.  I have other things I have to deal with in
21     the next two weeks, but I think I can get it out, and then, say
22     ten days after the memorandum, have the parties submit a
23     proposed scheduling order designed to bring the case to
24     resolution.
25             As I said, the factfinding I believe has to be done by
```

1  jury-waive, that is nonjury, which, as it happens, means that
2  this can happen a lot faster.
3      We're just starting criminal jury trials now.  We are
4  finding that while jurors are, commendably frankly, willing to
5  serve, the process of doing that and social distancing in our
6  courtrooms is extraordinarily difficult, and it's made much
7  easier, obviously, if we go jury-waive since we don't have to
8  have jurors in a case, even in a civil case, which we're
9  limiting now to eight-person cases.
10     But priority in jury cases is for persons in custody,
11 and we've got a ways to go with that.  I'm not even certain
12 that we'll be able to do two-person cases, two-defendant cases
13 in the courtroom with criminal cases because we have to limit
14 the size of our complement of people in the large courtrooms to
15 26, no more than 26 people.
16     While I was fairly deeply involved in the design of
17 this building, I thought those courtrooms were pretty big and
18 in fact have tried a 12-defendant criminal case with defendants
19 having two counsel each in the courtroom.  Now we can't do
20 that.  There's just no way to do it and limit the size of the
21 complement there.
22     That's by way of general background.  We'll talk more
23 specifically about what needs to be done, but you can start
24 thinking along those lines while I spend some time getting this
25 thing out to you.  And as I said, I think ten days might be

1    enough to narrow this so we can get right to the nub of the
2    case as promptly as possible.  And I think with a nonjury trial
3    I can give you something pretty promptly, which is not
4    something I can say to either criminal and civil cases now.
5    I'm in a cue with 13 other judges for criminal cases, and we
6    have to take turns in the courtrooms that we use.
7         So any other thoughts, any other comments that you'd
8    like to offer at this point?
9         MR. DAVENPORT:  No, Your Honor.
02:44 10      MR. LURIE:  No, Your Honor.
11        THE COURT:  Okay.  So I will get this out to you as
12   promptly as I can, and then we'll go from there along those
13   lines, unless, after you look at it you say, "No, no, we can't
14   do that."  And of course I will understand that you understand
15   your cases better than I, but that will at least get this thing
16   going more promptly to an ultimate resolution at least here in
17   this court.  Okay?
18        If there's nothing further, then we will be in recess.
19   Thank you.
20        (Adjourned, 2:44 p.m.)
21
22
23
24
25

```
 1                CERTIFICATE OF OFFICIAL REPORTER
 2
 3          I, Kelly Mortellite, Registered Merit Reporter
 4   and Certified Realtime Reporter, in and for the United States
 5   District Court for the District of Massachusetts, do hereby
 6   certify that the foregoing transcript is a true and correct
 7   transcript of the stenographically reported proceedings held in
 8   the above-entitled matter to the best of my skill and ability.
 9                Dated this 14th day of October, 2020.
10
11                /s/ Kelly Mortellite
12                _____
13                Kelly Mortellite, RMR, CRR
14                Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```